Arguments not to exceed 15 minutes per side. Mr. Shimkus for Appellant Appley. Counsel, good afternoon. I know you've told the clerk but are you reserving time for rebuttal? Yes, your honor. Three minutes please. Alright, you may proceed. Thank you, your honor, and good afternoon to you, your honors. Your honor, this is a rare child sexual abuse case in which there is, as the Michigan Court of Appeals put it, significant corroborating evidence. This includes statements from the young victim to his sister and his treating physician, physical evidence of abuse seen by both the victim's mother and the treating physician, and the fact that Beverly had twice committed other sexual crimes against non-equalists. Accordingly, Beverly's trial counsel's admittedly deficient performance is essentially immaterial in this case because there was no reasonable probability of a different outcome. But how do you deal with the fact that the prosecutor emphasized that this was sworn testimony before the jury? Doesn't that make it a material aspect of the case? So, your honor, it's obviously not great, right? It's not good that the prosecutor or anyone else told the jury that this person was, had sworn an oath or knew how to tell the truth or anything along those lines. But it's important to remember that the victim's statements also came in through other witnesses. And so the victim's testimony alone isn't the only evidence we're looking at here. The statements also came in through his sister, through excited utterances, and through his treating physician as a statement for purposes of medical diagnosis. But the problem there is the victim gave contradictory statements about what had transpired, and so there's discrepancies there. He didn't get to state what had actually occurred at the trial, and he wasn't subject to cross-examination at the trial. That is correct, your honor. His testimony differed from his preliminary examination testimony compared to, I believe it was the sister's testimony and perhaps the mother's to some extent as well at trial. And we also have the problem that because the testimony was contradictory, the state or the prosecutor switched theories in the middle of the trial as to what had factually occurred that constituted the abuse. And that's without there being any first-hand testimony as to what actually had occurred by anybody who had observed it. You know, first it was said that the child was digitally penetrated and that was the theory of the prosecution's case, and because the child said something different from that, said that and some other things, then the theory was changed that the child was digitally abused, but also abused in a different way, so genitally in addition to digitally. So then the testimony was contradictory, and the theory of the case by the prosecution was changed in the middle of the trial without the victim or anybody who had witnessed the incident having testified. Isn't that a little bit of a problem? So, your honor, all of that is true. Absolutely. But it's, for one thing, important to note that Michigan law does allow the amendment of the information through the trial. I cited that case in my brief, that if the evidence comes in slightly differently, they can amend the charges. But the other point here, your honor, is that it doesn't matter what the theory of penetration was because penetration is penetration no matter how it's accomplished. Well, there were other contradictory things. The child told the sister that the incident had occurred in the bedroom upstairs and told somebody else, the mother or somebody, that it had occurred in the basement. There's just all these contradictory things, but let me ask you this. The judge at the trial did not examine the child to determine if he knew the difference between right and wrong or the importance of telling the truth. Even that small amount wasn't done. Isn't that a problem? So, if I may, your honor, that's true that did not occur at the preliminary examination, but the judge did engage the child in somewhat of a, I suppose, a colloquy, if you will, or a series of questions at the trial outside the presence of the jury to make the determination of whether the child was available. I can't remember whether the child was excluded based on that examination or whether the prosecutor just decided not to call the child. So, your honor, it was a determination of unavailability. Unavailability on the part. The judge made the determination of unavailability. That is correct. Because of reliability. Because the child was having trouble or, I suppose, refused to answer questions outside the presence of the jury from both the prosecutor and the judge. The child did answer a few preliminary questions, and I do want to bring that back to Judge Clay's question about whether the child was engaged in whether they knew how to tell the truth or not. And there were a few occasions where the child was asked sort of the example questions to know how to tell the truth. So the prosecutor said something like, would I be telling the truth if I said that I was a boy? The child said no, because the prosecutor was a woman. And the judge, for instance, I believe was a male. And similarly, the prosecutor asked, if I told you the judge was a woman, would that be true? The child said no. So there were a few instances, and those appear on page 598 in our record. But these questions were at the trial, not at the preliminary examination, correct? Yes. And so the preliminary examination, not testimony, but statements, were ultimately admitted at the trial? Yes, Your Honor, through reading the testimony. Can I ask something else, which is kind of changing gears just a little bit? Did Mr. Beverly's prior convictions, how were they admitted? Did he testify? No, he did not testify, Your Honor. They were admitted, I believe, essentially by stipulation. The prosecutor admitted the records, the certified records of his previous convictions. Did that matter for purposes of the offense of conviction? Because ordinarily, you know, you wouldn't admit that kind of a prior record in the absence of the defendant's testimony. And if it's admitted just to show a probability that, I mean, I understand that's not the issue in this case, but I'm just curious about if they're admitted to show the probability that because he previously sexually abused a child, he did so in this instance, that would ordinarily be problematic. So I'm just curious as to how those prior convictions, on what basis they were admitted. So, Your Honor, they were admitted under Michigan's statutory equivalent of this, the federal rules of evidence, Rule 414, which allows prior convictions of child sexual abuse to come in for propensity purposes. And those supersede any other ass evidence, any rules of evidence. So this is a special evidentiary rule for child sexual abuse cases? Correct. Okay. It is Michigan compiled laws. I understand that's not the issue in this case, but I was just curious as to exactly how that happened. Sure. But it is relevant in this case because that's... Because it does go to the overall weight of the evidence. Precisely, Your Honor. Yeah. That contributes to what the Michigan Court of Appeals called significant corroborative evidence. Even Judge Shapiro, in his concurrence, pointed out these prior convictions. In addition to the child's other statements coming in through his sister and the treating physician and the physical evidence. The physical evidence in this case was, frankly, for child sexual abuse cases, I would say rather rare. Because of the timing in this case, the... The child's immediate reporting, you mean. Correct. He told his sister in the morning, I believe it was around 10 or 11 a.m., the sister immediately reporting it to the mother. The mother called the police and took the victim to... I believe the ambulance took the victim to the hospital. And both... And there was lay reporting of the apparent injuries to the child as well as medical testimony. That is true, Your Honor. Yes. The victim's mother... I'll try not to get into any sort of graphic details, but the victim's mother did check the victim's buttocks and observed apparent injury. And so had the child taken to the hospital where it was confirmed that he had injuries there. Both two tears and what the doctor called decreased tone. Which, again, I hate to get too graphic, but the doctor specifically testified that this was evidence of repeated penetration from the outside in. And so this is... Of course... Yes, Your Honor. With friends and all kinds of people in and out of the house. So then the question is, who injured the child? And we've got a preliminary exam where there was unsworn testimony from a seven-year-old. In terms of the confrontation right, the preliminary... The function of the preliminary exam is just to bind somebody over for trial. You just... All you need is probable cause that a crime is being committed and the defendant committed the crime. That's not something that's ordinarily used as the only testimony at trial to prove a case beyond a reasonable doubt. Testimony at preliminary examination is frequently limited and incomplete. And for strategic reasons, attorneys frequently don't go into a lot of detail at cross-examination. So doesn't that really accentuate the problem that there was a confrontation clause violation here, that this unsworn testimony of a seven-year-old with inadequate cross-examination is almost the entire basis for the conviction? So, Your Honor, I will gently disagree with the last statement, but that was some sort of the entire basis of the conviction. Well, the family member's testimony went to the fact that the child was injured, not as to who did it. Again, if I may, Your Honor, the victim didn't tell his sister specifically who injured him. In fact, it was Mr. Beverly. And he also told his doctor specifically who injured him. And I believe the mother reported to the doctor as well that there was some suspicion that it was Mr. Beverly. But the victim's identification of his abuser absolutely came into the record. By hearsay. I'm sorry, Your Honor. By hearsay. Correct, admissible hearsay, Your Honor. Yes. Well, that's a matter of dispute. I mean, the attorney for the defendant objected to almost nothing during all these proceedings. Well, Your Honor, the attorney certainly raised some objections. I think the opposing counsel's point is, Your Honor, I see my time has expired. You can answer. You can finish your answer, at least. Yes. Counsel did raise several objections, admittedly, but not necessarily the ones that Kate East Counsel now believes he should have raised. But he did raise several objections. The only thing I'll add, Your Honor, before my rebuttal time is that there was significant corroborating evidence in this case. So there can't be prejudice in a persistence claim, and any confrontation error was harmless. Was the basis for the admission of the child's statements in close proximity to the abuse, I mean, there would have been some exception to the hearsay rule, either, you know, excited utterance or something like that. Is that? Yes, Your Honor. The statement was admitted specifically as an excited utterance to the sister, and then under the statement for purposes of medical diagnosis and treatment for the doctor. Okay. Thank you, Your Honor. Thank you. Good afternoon, Your Honor. Sophia Nelson of the State Appellate Defender's Office on behalf of Emmanuel Beverly. In order to admit testimonial hearsay at trial, there are two standards that must be met, both Michigan evidentiary rules and the Confrontation Clause requirements of both the Michigan Constitution and the Federal Constitution. Neither were met here. If this evidence had been properly excluded, the prosecution would have been left trying an actual assault case without a complaint, and any prosecutor would tell you that is an exceedingly difficult thing to do. These issues get conflated somewhat, both, I think, in the Court of Appeals decision of the State Court and also somewhat by the District Court opinion below. These evidentiary requirements and the requirements of the Confrontation Clause, and I think this is understandable because as recognized by the Michigan Supreme Court in People v. Cole, the Michigan rules are in part designed, by design, to protect constitutional floor. Now, they can go beyond that and include additional requirements, certainly, but here, Michigan Rule of Evidence 804, which allows for some exceptions of hearsay to be admitted, does in fact reference the cross-examination, which, of course, is also a requirement of the Federal Constitution. You don't contest specifically the admission of the evidence that was presented, do you? I certainly do. At the TV's, the complaint, the child complaint. Well, that was not presented. I'm talking about what was left because the key question here, really, I mean, obviously, we know the attorney performed deficiently at the preliminary examination. The question is whether, given the unavailability of the child, the remaining evidence was such that there was any prejudice. And so, I'm questioning whether you have any quibble with the admissibility of the evidence that was admitted at trial or whether your argument is really limited to whether that evidence was so convincing that there was no prejudice. So, I have two parts to that. First, the complainant's statements at the preliminary exam, that testimonial hearsay, was admitted at trial. Oh, I forgot about that. You're absolutely right. He wasn't. The complainant did not testify, but the statement was admitted. A cop reenacted the complainant's testimony from the witness stand, and not just the prosecutor emphasized that it was given under oath or affirmation but the judge specifically instructed the jury that that was the case. This jury was gravely misled, which undermines the reliability of this verdict significantly. But secondly, I do quibble with not the admissibility necessarily, but the content of the other hearsay. The only person who identified Mr. Beverley as the source of this injury, whose testimony was admissible, was his sister. And that testimony was elicited from the sister. The sister approached her brother, who was crying, and asked her, did their nickname for my client touch you or anything? So we know absent TV's testimony in this case, we would have had a very, very different trial where there could have been areas of cross-examination exploring the child's accessibility of a seven-year-old when they're prompted to identify a particular person. I thought that your adversary argued that the child also identified his abuser to the doctor. That is an area of great dispute. The transcript reads, the doctor said, I don't remember this examination. I'm testifying from my medical records. Obviously, the doctor never met Mr. Beverley, so wouldn't know who Mr. Beverley is. And the only statement the doctor made from the witness stand was, that man. And the record does not say, let the record reflect that the doctor identified Mr. Beverley as the assailant. Now, this was obviously, Was Mr. Beverley the only male individual residing in that household? I don't believe so. I think Judge Clay's estimation of the household is a multi-generational household. I know at least three generations lived there. Well, yeah, but my information said it was the grandmother's house and the child's mother and sisters lived there. But I've not seen anything that suggests to me that any other male lived there. Am I wrong about that? There's nothing concrete in the record, Your Honor, that would say there was another male living there. But I think it's entirely reasonable and had to be. But you would be speculating to think that other people came into that home and could have committed this abuse. There's no evidence to that effect, right? Correct, Your Honor, but what this trial would have been, if this testimonial seer say had probably been excluded, either on Michigan evidentiary grounds or under confrontation grounds, it would have been a totally different trial. A trial without a complainant. And there would have been a totally different trial strategy. Areas of cross-examination that could have been developed. Expert witnesses that could potentially have been put forth about child's adjustability when you're prompting a child to give a certain answer, especially at that very young of age. These are... Let me ask you this. So there were some physical marks or indications on the child that something had been inserted. Do you agree with that? That this child was abused in some way, I think is the answer. Okay. And that's my question. So it's not that the child did anything to himself. It's that someone else did something to the child. Is the defense in agreement on that point? I would only be speculating as to what caused the injuries, but that something happened to this child, I think is obvious. But there wasn't an argument at the trial that the child did it to himself. No, but what the argument in defense could be at trial, absent the admissible hearsay, what we have here is an instance where it might as well have been a letter that he had written back, and then he refused to show up to court, and we're admitting that letter as testimonial. Right, but I guess what I'm getting at is for the prejudice point, I think you do have to establish based on, it seems like the way you're presenting the case is that you agree something happened to the child, but that it didn't come from Beverly, it came from someone else. Is that the argument? Yes, that would be the argument. Okay. That would certainly be the most obvious trial strategy that could be put forth absent TB's testimony and hearsay statements. Okay. And I just want to go back to the confrontation clause issue here. The federal district court, I think it's record document 1313, does find that this was a preserved confrontation clause claim, in that trial counsel did object on the grounds that there wasn't an adequate opportunity to cross examine. Was there any mention of the word confrontation in the objection? No, Your Honor. But the quintessential right preserved by the confrontation clause is the right to cross examination. That's recognized in the Michigan Court of Institutional Vs. Gaines and, of course, by the United States Supreme Court repeatedly, that that is, in fact, the purpose of the confrontation clause, is the right to cross examine in person to explore inconsistencies and to develop the record. And as Judge Clay referenced earlier, the motives and the ability – first of all, this trial was never cross examined. The cross examination was never open or abstained. Well, wasn't the objection that there just was a different motivation at the preliminary examination than there would be at trial on the part of defense counsel? That is a confrontation clause objection because – How is that a confrontation clause objection? I mean, that goes more to just an evidentiary question, doesn't it? I mean, I think that's the problem that I was trying to elicit earlier, which is that the Michigan rules of evidence are coextensive with the federal constitution. So we have here that in order to meet the evidentiary bar, there needs to be an adequate opportunity for prior cross examination. That is also a requirement of the federal constitution in the confrontation clause. And so whether or not this evidence was admissible under Michigan rules of evidence, obviously the attorney general concedes that it was not by finding – So this objection, if you were arguing under state law, you would say it preserved the objection under state law, under the rule for cross examination. I think if you were preserving this objection under the Michigan rules of evidence and how trial counsel was found ineffective by the federal district court, you would object under Michigan rules of evidence 603, which require – Would you specifically invoke the rule? You would. Well, then why shouldn't you also have to specifically invoke the confrontation clause if you're going to raise a constitutional objection? I think if you're pointing to a specific rule of evidence, you need to use the right number. When you're talking about a constitutional right, magic words are not necessarily what's required. It's speaking of what the right is. And the Michigan Contemporary Disobjection Rule, MRN 103, requires that you identify the – When you're objecting to the admission of evidence, you identify what evidence you're trying to exclude and what the grounds for exclusion are. Here, the evidence is the transcript. The grounds are adequate opportunity to cross examine. That's a right that's rooted in the confrontation clause. So this error was brought to the court's attention. The evidence that was to be excluded was brought to the court's attention. And the remedy, exclusion, is the same, whether it's an inadequate opportunity for cross-examination under the Michigan rules of evidence or under the federal – But the point here was that he was not sworn, that the child wasn't sworn, correct? Isn't that the point why the confrontation clause was not complied with? I think there are multiple reasons the confrontation clause wasn't complied with. One, there was no cross-examination because cross-examination – Well, there was no cross-examination at all at the preliminary examination? Well, under Maryland v. Cray, cross-examination only happens when someone's duty to tell the truth has been awakened. Okay, which is where you've had an oath, correct? So isn't that what the complaint is when it comes to the confrontation clause, that the child was not sworn? Yes, it's also that the theory, as Judge Clay identified, the theory of guilt changed midway through trial, preventing cross-examination on the alternative theory of guilt. We have a unanimous jury – Now, did you have any ruling from the court at the trial that, when this objection was raised, did the court talk about an oath? I mean, this was not even an issue, was it, before the trial court, as to whether or not the child had been sworn under oath, correct? The court did not discuss the oath, but again, all the Michigan Rules of Evidence require for the contemporary subjection is, one, that the evidence that's being excluded is identified and the grounds for exclusion is identified. So the judge's comments aren't relevant to determining what the nature of the objection was? I believe the judge's comments are certainly relevant, but I don't think they're dispositive. What we have here is a preserved constitutional objection on confrontation clause grounds that was treated as an unpreserved error by the Michigan Court of Appeals. And under Cone v. Bell, if state courts erroneously deny relief on a preserved constitutional claim using procedural default and they erroneously apply it, this court can review de novo. And that would allow this court to apply Chapman properly, which has never been done, to this preserved constitutional claim, a violation of the quintessential right to confront the witnesses against you. The thing that upsets me so much about this case is lawyers and non-lawyers alike understand when you go to court, when you are accused of something, your accuser has to swear to tell the truth. This is not something that you need to have gone to law school to understand. Well, I would say that your outrage is appropriate, but I think the thing that is problematic here, I mean the lawyer messed up. His deficient performance is acknowledged. Who knows how in the world this child was permitted to give evidence, or not evidence technically, but was admitted to tell his story at a preliminary examination without any of the normal procedures that would assist us so that the incompetence of counsel was great. On the other hand, this case is a bit unusual in terms of the degree of evidence that existed absent the child's testimony. So, I mean, you are right, but you might be wrong in the end. Certainly, prejudice under Strickland is a reasonable probability of a different outcome. Absent a complainant in a sexual assault case, there is a reasonable probability of a different outcome. Can I ask you just one quick question? It's a little inaccurate to say that the theory changed. To the extent there was a change in what the prosecution was contending, it was based on the doctor's testimony, and it was, I guess, another alternative theory, as opposed to a complete change of theory. Would that be a strict, I mean, I may seem to be quibbling over nothing, but I would probably characterize it a little differently. Yes, Your Honor. I think what's important here is Mr. Beverly is entitled to a unanimous jury, a jury that all agrees on why he's guilty. And when you don't have the opportunity to cross-examine the complainant about the changed nature of the penetration, you may have forgers who thought it was digital, and forgers that thought it was… I'm not sure that unanimity would be required on that, but nevertheless, we're probably afield of what the issues precisely are here. The reasons that I contend that Mr. Beverly is entitled to habeas relief, both on the preserved confrontation clause issue and on the ineffective assistance of counsel issue, is that this gravely affected the integrity of the system. You have a jury that was lied to about the veracity of the evidence, both by the prosecution and the judge. They likely convicted him based on TB's testimonial law, because they're instructed, you can believe this little kid. This little kid is telling the truth. He was qualified to tell the truth, and he told the truth. You also have an instance where inconsistencies were not able to be explored on cross-examination about, well, who was present? Because TB, at the moment, said his sister was present in the room when this happened. And his sister testified at trial that if that's what he said, it was a lie, because I wasn't there. And about where, what room in the house this occurred. So there are numerous inconsistencies. The nature of the abuse, where it occurred, and who was present. None of which got to be adequately explored on cross-examination. But there is a reason prosecutors don't try cases without complaining witnesses. It's incredibly difficult to convince a jury that someone is guilty of something if the person it happened to isn't there. So I believe very strongly that there's a reasonable probability of a different outcome in this case, even with the sister's testimony. And, of course, I disagree with the nature of the doctor identifying the survivor. I think that's impossible. He never met a survivor. I know you're out of time, but let me ask you one last thing here. Just to clarify what it is that we as a court are reviewing,  the appeal is on two bases, ineffective assistance of counsel and confrontation clause violation. The district judge found ineffective assistance of counsel. He didn't find expressly a confrontation clause violation, but he found ineffective assistance of counsel based on confrontation clause problems. So are we reviewing only the ineffective assistance issue, or are we reviewing both confrontation clause violations as well as ineffective assistance? Well, I would put the court at two points in the district court's planning, 1313 and 1316. In 1313, the court acknowledges that this confrontation clause issue was preserved. And at 1316, the court says that this violated the established federal law, specifically Maryland v. Craig, in the absence of the oath of affirmation. Now, in granting relief, the court says this was ineffective assistance of counsel for failing to object on Michigan evidentiary grounds, which is what the dissent in the Court of Appeals State Court said. So certainly this court is free to affirm the district court on the basis of the ineffective assistance of counsel claim. It's also, I filed a cross appeal, so the preserved constitutional confrontation claim is right for this court to rule on, or this court could remand it to the district court for full consideration of the confrontation clause issue, although I think how the court would rule is readily apparent in this opinion, in that it found both that it was preserved, there was an error, and it applied Strickland. And we know that Brack is Strickland subsumes Brack. So if they were applying Brack to the preserved constitutional claim, the same outcome would happen here with the prejudice analysis. So both are before this court. Mr. Ramirez and Howe's relief on both claims. And there's lots of that in this group. All right. Thank you. Thank you, Your Honor. We'll hear rebuttal. Thank you. Yes, Your Honor, this is the attorney general's discussion. Just a few points for rebuttal. First, this goes back to the discussion that was just had, and to some extent Judge Clay heard earlier questions about the discrepancies in the testimony. I just want to point out, and I know I did in my brief, but all of those discrepancies, anything the victim said, anything the sister said, the doctor, whoever, all of that information was in front of the jury. The jury was able to weigh whether they believed the sister's testimony, the victim's testimony, whatever it might be. Although admittedly the victim's testimony was incomplete. That was an unsworn statement at preliminary exam just for purpose of binding over for trial, which is to say to establish probable cause. So it might be a bit of an overstatement to say that all of the evidence in the testimony was before the jury. Well, I suppose the point is, Your Honor, they heard these different versions, if you will, that opposing counsel is sort of touting on AB's review here. They were able to hear the victim say one thing from the preliminary examination and perhaps something different from his sister, but the fact is they heard that information and they could weigh that information. Your Honor, the other thing I would like to point out is the question that Judge Skidman, too, had asked about what the doctor had said in terms of the identification of the abuser. And specifically the doctor testified, according to TB, he used the victim's first name, but we'll say TB. According to TB, this man put his penis in his record. There didn't seem to be any dispute about who this man was. I know counsel said there was no, you know, let the record reflect that the doctor identified the defendant, anything like that, but he did say this man. He did not say a man or any other man. He said this man. That man. This is the only man we're talking about. Somewhat to that point, Your Honor, you would also ask if there were any other men who lived in the house. The record does show, I believe it was in the sister's testimony, that the victim's father lived in the house, but the sister did testify that the father was not home when this event occurred. Well, it wasn't established when it occurred. It's the problem. Nobody knows when it happened. Well, Your Honor, the victim came to the sister. It would seem like it was pretty fresh, especially given the freshness of the injuries. Well, it seems fresh is different from somebody knowing or could testify to when the abuse transpired. That is true, Your Honor, but there is certainly circumstantial evidence that abuse occurred in a relatively small window based on the freshness of the collections. And just briefly, Your Honors, the most important thing to remember here is that this Court's review is under-ethical. So it's not enough that Mr. Beverly shows deficient performance. He shows some ethical prejudice. He has to show that the Michigan Court reveals determinations on all of these issues, both competition and the practices of superstition, were objectively unreasonable. No fair-minded jurist could disagree. What if we determined the Brecht standard applied to confrontation clause? Would you still prevail? Absolutely, Your Honor, for all the same reasons that there was no prejudice for the trial counsel. Because there was so much other evidence here that even if we were to disregard the victim's testimony, the reading of the victim's preliminary examination testimony of the trial, all of this other evidence would have shown that Mr. Beverly – it does show that Mr. Beverly committed these crimes. And so for all these reasons, Your Honors, I'm more than happy to answer any questions. Well, if the claim was forfeited as opposed to having been waived and was not adjudicated on the merits, it's arguable as to whether APA applies under the circumstances of this case, wouldn't you say? Your Honor, I would disagree with that. The Michigan Court reveals it addressed both claims squarely on the merits. The Michigan Court reveals it addressed the confrontation claim, discussing whether the child was available and there was an opportunity for a cross. And the Michigan Court reveals it explicitly addressed both of those. Well, if the Michigan Court of Appeals did not acknowledge the facts and circumstances of the testimony or were wrong about what had even happened procedurally, then there wouldn't be a reason to defer to the state court. Well, Your Honor, even if the Michigan Court of Appeals got the waiver versus forfeiture issue perhaps incorrect under state law, that doesn't change this Court's analysis of the constitutional issue about whether the confrontation clause was violated and whether trial counsel both performed efficiently and there was equitable prejudice. And then, of course, on top of all of that, whether those decisions were unreasonable. So for all these reasons, Your Honor, we would ask you to affirm the denial of previous ruling on the confrontation claim and reverse the conditional grant of previous ruling on the trial counsel claim. Thank you. Thank you, and the Court would like to thank both counsel for excellent arguments and presentation. There being no further cases for this afternoon.